United States District Court
Southern District of Texas
**ENTERED**
November 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DWAYNE KEITH WILSON, | § | |
| | § | |
| *Plaintiff,* | § | Case No. 4:22-CV-03906 |
| | § | |
| v. | § | |
| | § | |
| DEPUTY CHRISTOPHER | § | |
| COCKRELL, DEPUTY RAY | § | |
| THOMPSON, III, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND ORDER

This is a suit asserting constitutional violations arising out of a traffic stop and standard field sobriety tests Defendants Deputy Christopher Cockrell and Deputy Ray Thompson, III, of the Harris County Constable ("HCC") Precinct 4 conducted on Plaintiff Dwayne Wilson.[1] Acting *pro se*, Wilson filed this *in forma pauperis* ("IFP") action[2] asserting claims for racial profiling and unlawful search and seizure under 42 U.S.C. § 1983 against Defendants in their individual and official capacities, as well as claims for municipal liability. Pl.'s First Am. Compl., ECF No. 19-1; *see*

---

[1] Based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order, ECF No. 15.

[2] Alongside his original complaint, Wilson filed an application to proceed in district court without prepaying fees or costs, pursuant to 28 U.S.C. § 1915(a). ECF No. 2. Wilson's application was granted shortly thereafter. Order, ECF No. 5.

*also* Order, ECF No. 20 (granting leave to amend). Pending before the Court is Deputy Cockrell's motion for summary judgment. ECF No. 23.

Based on a careful review of the amended complaint, the briefing,[3] and the law, the Court concludes that Deputy Cockrell's motion for summary judgment, ECF No. 23, should be granted because the video evidence establishes that Deputy Cockrell had reasonable suspicion throughout the encounter and thus no constitutional violation occurred. The Court also reviews Wilson's remaining claims *sua sponte* for frivolousness under 28 U.S.C. § 1915(e). Because any claim for municipal liability must be premised on a constitutional violation and the court finds that no constitutional violation occurred, Wilson's amended complaint, ECF No. 19-1, fails to state a claim and must be dismissed.

## I.      BACKGROUND

### A.      Factual Background

In the early morning hours of May 30, 2022, Deputy Cockrell and his partner Deputy Thompson were on patrol in the vicinity of 7210 FM 1960 Road West in Houston, Texas, as part of an HCC initiative to prevent accidents due to driving while intoxicated ("DWI") over the Memorial Day weekend. ECF No. 23-3 at 1. The parties' briefing relies heavily on Deputy Cockrell's dashcam and bodycam footage,

---

[3] Wilson filed a response, ECF No. 31, and Deputy Cockrell filed a reply, ECF No. 32.

ECF No. 30 (USB flash drive), which the Court summarizes below.[4]

Deputy Cockrell's dashcam footage begins at 2:06:30 AM, showing a white sedan following closely behind another vehicle in front, driving approximately 50 mph. As the vehicles drive over a railroad crossing, the footage shows the white sedan's passenger-side wheels driving over the solid white divider line between lanes for about three seconds. At approximately 2:07 AM, Deputy Cockrell appears to activate his flashing lights to signal the vehicles to pull over. The two vehicles slow down, turn on their left turn signals, and then make a U-turn to pull into a nearby parking lot. Deputy Cockrell's vehicle follows and pulls up behind the white sedan with Florida plates.

Around 2:08 AM,[5] Deputy Cockrell exits his vehicle and approaches Wilson, the driver of the white sedan. Deputy Thompson also exits from the passenger side.[6] Deputy Cockrell first asks Wilson to roll down the rear driver's side window, and

---

[4] Where necessary, the Court differentiates between the dashcam and bodycam footage, which are contained as separate videos on the USB flash drive. Both parties offer the footage as evidence, ECF No. 23-2; ECF No. 31, Ex. 1, and neither party disputes the authenticity, accuracy, or completeness of the submitted video evidence. Accordingly, the Court views the events "in the light depicted by the videotape" and will disregard any portion of the parties' affidavits that are "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

[5] Although the bodycam footage shows the timestamp as 3:08 AM, the dashcam footage and all other summary judgment evidence, *see* ECF No. 23-4 (warning citation); ECF No. 23-5 (event report), indicate the traffic stop commenced around 2:08 AM and ended around 2:22 AM, for a total time of 14 minutes. The Court surmises that the bodycam's clock was an hour ahead, likely not having been reset after daylight saving time.

[6] Throughout the encounter, Deputy Cockrell takes the lead and Deputy Thompson stands by as backup. Deputy Thompson does not appear to say anything to or otherwise interact with Wilson.

Wilson complies. Deputy Cockrell then identifies himself and asks for Wilson's driver's license, which Wilson hands over after briefly dropping his wallet. Deputy Cockrell informs Wilson that the reason he was pulled over was failure to drive in a single lane. Deputy Cockrell then proceeds to ask Wilson some basic questions:

> Deputy: Where you headed from?
> Wilson: (indiscernible).[7]
> Deputy: I'm sorry, say that again?
> Wilson: I was following the young lady in the Benz, she's from (indiscernible).
> Deputy: You were following that young lady in the Benz?
> Wilson: Yes.
> Deputy: Okay, where were y'all headed to?
> Wilson: Back to her house.
> Deputy: Back to her house? Where y'all headed from?
> Wilson: She just met me (indiscernible).
> Deputy: She just met you? Where did y'all meet at?
> Wilson: She met me from, where she came from the club.
> Deputy: Okay, which club was that?
> Wilson: (indiscernible).
> Deputy: So y'all just left the club?
> Wilson: No, she did.
> Deputy: Okay. And where are you coming from?
> Wilson: I'm coming from my friend's house.
> Deputy: What were you doing at your friend's house?
> Wilson: Watching (indiscernible).
> Deputy: Watching the game? Alright, step out and talk to me for a second, Mr. Wilson?

Wilson mumbles something as he steps out of his car, and Deputy Cockrell asks him to stand behind his white sedan and wait. Deputy Cockrell and Deputy Thompson

---

[7] Wilson's speech, while not slurred, is relatively slow and mumbled, and even Deputy Cockrell appears to have difficulty hearing some of his answers.

then return to their vehicle to check Wilson's driver's license while Wilson leans

against the trunk of the white sedan for about two minutes.[8]

Around 2:11 AM, Deputy Cockrell and Deputy Thompson step back out of

their vehicle, and Deputy Cockrell asks Wilson some follow-up questions:

> Deputy: So you're coming from a friend's house and you're all
>     watching the game tonight? Which game were y'all watching?
> Wilson: Boston (indiscernible).
> Deputy: When you were at your friend's house did you have anything
>     to drink tonight?
> Wilson: No, sir.
> Deputy: You had no alcoholic beverages whatsoever?
> Wilson: Not at all.
> Deputy: Okay. Would you be willing to perform standard field sobriety
>     tests to reassure that you are not impaired?
> Wilson: Are you serious? You don't even smell no liquor or nothing.
>     What'd you pull me over for again?[9]
> Deputy: Failing to drive in a single lane in traffic.
> Wilson: You gonna write me a ticket or what? What's going on?
> Deputy: I'm doing an investigation right now.
> Wilson: Why are you harassing me?

Wilson continues to argue with Deputy Cockrell, saying: "You don't smell liquor or

nothing, so you have no probable cause. You're violating my Fourth and Fourteenth

Amendment." Deputy Cockrell responds that he had "probable cause to pull you

over," and "probable cause to conduct an investigation." Deputy Cockrell clarifies

that he is "verifying that you're not an impaired driver," because intoxication may

---

[8] The dashcam footages shows Wilson leaning against the trunk while waiting for the Deputies.

[9] Although Wilson raises his voice at this point, clearly indignant that he has been asked to perform field sobriety tests, both he and Deputy Cockrell remain composed throughout the encounter. Wilson's demeanor does not separately appear to show any signs of intoxication.

be caused be "things other than alcohol," and "not all drugs have a smell." Deputy Cockrell further explains, "I'm trying to get you on your way home, but before I do that, I have to verify that it's safe for you to drive." At that point, Wilson agrees to perform standard field sobriety tests, saying: "C'mon, what you want me to do."

Beginning at 2:13 AM, Deputy Cockrell has Wilson perform what appears to be the nystagmus test and the walk-and-turn test. The tests take a little over three minutes to complete, after which Deputy Cockrell instructs Wilson to wait inside his white sedan. Deputy Cockrell and Deputy Thompson return to their vehicle and enter data into the computer terminal, which then prints out a warning citation. At around 2:21 AM, Deputy Cockrell exits his vehicle with Wilson's driver's license and the citation. Deputy Cockrell hands those to Wilson and informs him that he is free to go. The entire traffic stop and investigation lasts no more than 14 minutes.

### B.    Procedural Background

Wilson filed this IFP action naming Deputy Cockrell, in his individual and official capacities, as the sole defendant.[10] ECF No. 1. Wilson subsequently amended his complaint and clarified his claims, asserting violations of his rights under the Fourth, Fifth, and Fourteenth Amendments, for unlawful search and seizure, as well as municipal liability. ECF No. 19-1 ¶¶ 64-74. Although Wilson

---

[10] Wilson originally named "Officer C. Cockrell" as the sole defendant, ECF No. 1, and then later amended his title to Deputy Cockrell, ECF No. 19-1.

implies that he was subjected to racial profiling in his factual allegations, no claim is raised. Wilson also added Deputy Thompson as a defendant, asserting identical claims against him and Deputy Cockrell. *Id.* ¶¶ 8-11, 64-70. Wilson did not name Harris County or the HCC as defendants.[11]

After the discovery deadline had passed, Wilson filed a motion to compel discovery, ECF No. 22, seeking training documents, traffic stop data, and other records not in Deputy Cockrell's possession. The next day, Deputy Cockrell filed the instant motion for summary judgment. ECF No. 23. Wilson sought to delay his response to the motion pending resolution of his motion to compel. Pl.'s Mot. Stay, ECF No. 26. Wilson subsequently filed his response to the motion for summary judgment, ECF No. 31, and Deputy Cockrell filed his reply, ECF No. 32. Ultimately, the Court denied Wilson's discovery motions as untimely and moot. Order, ECF No. 33.

## II.   STANDARDS OF REVIEW

### A.   Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the case, and

---

[11] Deputy Thompson never entered an appearance, and the record does not show that he was served with process.

a "genuine dispute" exists "when the evidence would allow a reasonable jury to return a verdict for the nonmovant." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). The moving party bears the initial burden of identifying "the basis for its motion" and any portions of the record that "demonstrate the absence of a genuine issue of material fact." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quotations omitted). The burden then shifts to the non-moving party, who must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quotations omitted). Summary judgment evidence "must be viewed in the light most favorable to the non-moving party, and reasonable inferences must be drawn in that party's favor." *Warren v. Fed. Nat'l Mortgage Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019). But when an official seeks summary judgment based on qualified immunity, "the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

Where video evidence is available at the summary-judgment stage, courts are instructed to "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). While courts normally resolve disputes in favor of the non-moving party on summary judgment, if their version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts." *Id.* at 380. But courts must proceed with caution when the video evidence is incomplete or ambiguous, or if its accuracy is challenged. *Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021).

### B.     Standards for Dismissal Under § 1915(e)

Pursuant to 28 U.S.C. § 1915(e), the Court is required to screen every IFP complaint and "shall dismiss the case at any time" if the action: (1) "is frivolous or malicious"; (2) "fails to state a claim on which relief may be granted"; or (3) seeks monetary relief against a defendant with immunity. 28 U.S.C. § 1915(e)(2)(B). "A district court may dismiss an IFP proceeding for frivolousness or maliciousness at any time, before or after service of process and before or after the defendant's answer." *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986). Courts apply the standards for dismissal under Federal Rule of Civil Procedure 12(b)(6) to determine whether an IFP complaint fails to state a claim. *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). A complaint must "contain sufficient factual matter . . . to 'state a claim

to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *King v. Baylor Univ.*, 46 F.4th 344, 355-56 (5th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). A complaint need not be detailed, but it must include sufficient "factual allegations that when assumed to be true raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (quotation omitted). The ultimate question "is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (quotation omitted).

## III.   ANALYSIS

In his motion, Deputy Cockrell argues that he is entitled to summary judgment because: (1) the traffic stop and DWI investigation were supported by reasonable suspicion, (2) there is no evidence of racial profiling, (3) he is protected by qualified immunity, (4) the Fifth Amendment is inapplicable under these circumstances, and (5) official-capacity claims are treated as claims against a municipality. *See* ECF No. 23. In response, Wilson argues that Deputy Cockrell unlawfully extended the traffic stop without probable cause. ECF No. 31 at 6-10. Wilson insists that evidence of racial profiling may be uncovered if his motion to compel is granted. *Id.* at 10-12.

Wilson then contends that Deputy Cockrell is not entitled to qualified immunity as the requirement of probable cause is clearly established, but voluntarily dismisses his Fifth Amendment and official-capacity claims against Deputy Cockrell. *Id.* at 12-14. In reply, Deputy Cockrell reiterates that the applicable standard for ordering field sobriety tests is reasonable suspicion. ECF No. 32.

As set forth below, based on the uncontroverted video evidence, the Court agrees with Deputy Cockrell that he had reasonable suspicion to make the initial stop and to conduct standard field sobriety tests, committing no constitutional violation. Thus, the Court grants summary judgment in his favor. The Court also reaches Wilson's remaining claims *sua sponte*, which must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to establish any constitutional violation.

### A. Deputy Cockrell Is Entitled to Summary Judgment on All Claims.

#### 1. *The video evidence confirms Deputy Cockrell had reasonable suspicion to stop Wilson and investigate whether Wilson was intoxicated or impaired.*

Deputy Cockrell seeks summary judgment on Wilson's Fourth Amendment claim for unlawful search and seizure, stemming from the traffic stop and standard field sobriety tests. Routine traffic stops constitute a Fourth Amendment "seizure," akin to a *Terry* stop,[12] which courts analyze through a two-part inquiry: (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's

---

[12] *See generally Terry v. Ohio*, 392 U.S. 1, 16-20 (1968) (considering the permissible justifications and scope of brief investigatory detentions in public places, sometimes called "stop-and-frisk").

subsequent actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). Both steps must be supported by reasonable suspicion. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). The analysis for reasonable suspicion "is necessarily fact-specific," and otherwise innocent factors "may in the aggregate rise to the level of reasonable suspicion," so courts "must consider 'the totality of the circumstances and the collective knowledge and experience of the officer.'" *United States v. Spears*, 636 Fed. App'x 893, 898 (5th Cir. 2016) (quotations omitted).

Deputy Cockrell contends that the dashcam and bodycam footage show that reasonable suspicion existed for both the initial traffic stop and the later request to perform standard field sobriety tests. ECF No. 23 at 6-7. Deputy Cockrell submits an affidavit in support, stating that he "observed a vehicle fail to drive in a single lane" at around 2:07 AM on Memorial Day, May 30, 2022. ECF No. 23-3. After initiating the traffic stop, Wilson informed Deputy Cockrell that "he had met a friend at a club and had been at a friend's house watching a game." *Id.* After running Wilson's license for warrants, Deputy Cockrell asked Wilson if he had anything to drink that night and "if he was willing to perform a field sobriety test." *Id.* "Wilson then became argumentative" at that point, but he "eventually consent[ed] to perform standardized field sobriety tests." *Id.* After those tests, Deputy Cockrell "did not see

any clues" that Wilson was intoxicated, so he issued a written warning, with the entire stop lasting under 15 minutes. *Id.* Deputy Cockrell's recitation of the facts largely mirrors his dashcam and bodycam footage.

In response, Wilson does not seriously contest the validity of the initial traffic stop,[13] arguing only that *even if* the Court found reasonable suspicion for the initial stop, Deputy Cockrell did not have reasonable suspicion or probable cause to investigate further. ECF No. 31 at 8. Wilson insists that "probable cause" cannot be premised on "the day of the week and time of night," or whether "he was coming from a club." *Id.* Relying on the bodycam footage, Wilson argues that there were no obvious "physical characteristics" to indicate that he was intoxicated, such as "a glazed look, lethargic reactions, a smell of alcohol or drugs, or slow response time." *Id.* at 8-9. Because "the stop lasted longer than necessary to check [his] driver's license and issue a ticket," Wilson contends that "Deputy Cockrell unlawfully prolonged the traffic stop on a 'mere hunch.'" *Id.*

### a. *The initial detention was justified.*

A traffic stop is justified when an officer has "reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Walker*, 49 F.4th 903, 907 (5th Cir.

---

[13] Although he has likely waived the argument, Wilson disputes elsewhere whether he committed any traffic violation, insisting that the initial stop was pretextual. ECF No. 31 at 2. Because Wilson is a *pro se* party, the Court will consider the reasonableness of the entire traffic stop. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (providing leniency for the pleadings of *pro se* parties).

2022) (quotation omitted). This standard only requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* (quotation omitted). "Reasonable suspicion is a low threshold," and where an officer personally witnesses a traffic violation, "then there is also reasonable suspicion to stop the vehicle." *Id.* The trivial nature of a traffic violation does not reduce an officer's justification. *See United States v. Villafranco-Elizondo*, 897 F.3d 635, 637, 640-41 (5th Cir. 2018) (upholding reasonable suspicion for initial traffic stop based on admittedly "minor traffic violations").

Based purely on the video evidence, the Court agrees with Deputy Cockrell that the initial traffic stop did not violate Wilson's Fourth Amendment rights. The dashcam footage plainly shows Wilson driving over the dividing line between lanes for several seconds, thereby failing to drive in a single lane. *See* ECF No. 30 at 2:06:55 AM (dashcam). The Court disregards Wilson's affidavit disputing whether he failed to drive in a single lane, ECF No. 31, Ex. 2 ¶¶ 2-5, which is contradicted by the video evidence.[14] Because an apparent traffic violation—albeit a minor

---

[14] The dashcam footage also appears to show Wilson following too closely, for which he received no citation or warning. *See* TEX. TRANSP. CODE § 545.062 (following distance). Deputy Cockrell does not rely on that potential justification and never mentioned it during the traffic stop. But even if the video did not show any *obvious* traffic violation, even a close call will suffice, as officers are generally permitted to rely on reasonable mistakes of fact as a basis for reasonable suspicion. *See United States v. Montes-Hernandez*, 350 Fed. App'x 862, 868 (5th Cir. 2009) (collecting cases). The Court nonetheless observes that multiple bases for the initial traffic stop are apparent from the dashcam footage alone.

one[15]—is visible on the dashcam footage, Deputy Cockrell had reasonable suspicion to briefly detain Wilson at least for the purposes of issuing a warning citation. *See United States v. Allam*, No. 1:23-CR-00010-MAC, 2023 WL 3398594, at *5 (E.D. Tex. Apr. 24, 2023), *report and recommendation adopted*, No. 1:23-CR-00010, 2023 WL 3391439 (E.D. Tex. May 10, 2023) ("[W]hen an officer actually witnesses an individual commit one or multiple traffic violations, that officer has, at minimum, reasonable suspicion to justify making a traffic stop.").

### b.   Deputy Cockrell was justified in prolonging the stop.

Once a traffic stop is initiated, the officer's actions thereafter must be "reasonably related to the circumstances that justified the stop." *Brigham*, 382 F.3d at 507. "A detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," but an officer may prolong that stop if "further reasonable suspicion, supported by articulable facts, emerges." *United States v. Henry*, 37 F.4th 173, 176 (5th Cir. 2022). Separate justification is unnecessary for an officer "to examine a driver's license," "run a computer check," or "ask about the purpose and itinerary of a driver's trip." *Brigham*, 382 F.3d at 508. The Fifth Circuit

---

[15] The operative Texas law requires drivers to "drive as nearly as practical within a single lane." TEX. TRANSP. CODE § 545.060(a)(1). While there is some disagreement among Texas courts over whether a showing of driving "unsafely" is also needed to constitute a violation, for the purposes of reasonable suspicion, the Fifth Circuit has routinely held that an officer's belief that a driver "broke the law by failing to maintain a single lane of traffic, even if mistaken, was objectively reasonable." *United States v. Valenzuela-Godinez*, 816 Fed. App'x 914, 918 (5th Cir. 2020) (per curiam); *accord United States v. Neal*, 777 Fed. App'x 776-77 (5th Cir. 2019) (per curiam).

has refused to prescribe the permissible length of detention or scope of questioning following a valid stop, so long as reasonable suspicion remains. *Id.* at 512; *cf. Villafranco-Elizondo*, 897 F.3d at 644 (indicating that drug-detection dog's failure to alert does not destroy officer's existing reasonable suspicion). An officer with reasonable suspicion of intoxication may order standard field sobriety tests to confirm or dispel that suspicion. *See United States v. Bourgeois*, No. CRIMA 3:06CR51TSL-JCS, 2007 WL 2219335, at *2 (S.D. Miss. July 30, 2007) (citing *Rogala v. D.C.*, 161 F.3d 44, 52 (D.C. Cir. 1998)); *Green v. Throckmorton*, 681 F.3d 853, 862 (6th Cir. 2012); *cf. Windham v. Harris Cnty.*, 875 F.3d 229, 241 (5th Cir. 2017) (upholding traffic stop based on reasonable suspicion prolonged extensively to allow administration of field sobriety tests).

Officers may rely on commonsense inferences, as well as specialized training and experience, to develop further reasonable suspicion. *See Kansas v. Glover*, 589 U.S. ___, 140 S. Ct. 1183, 1189 (2020) (noting that "driving in the median, crossing the center line on a highway, and swerving" indicate drunk driving "as a matter of common sense"). Reasonable suspicion can also arise from the stop's location and the time of day, in conjunction with other commonsense factors. *See, e.g.*, *United States v. Nelson*, 990 F.3d 947, 953 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 490 (2021) (describing commonsense factors considered in context of drug trafficking stops); *United States v. Cervantes*, 797 F.3d 326, 335 (5th Cir. 2015) (considering

time of day as factor for reasonable suspicion); *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (noting that Texas courts commonly treat "time of day" or "location near a bar district" as relevant to reasonable suspicion in DWI context). Courts must remember "not to treat each factor in isolation, but rather to give due regard to the totality of the circumstances." *United States v. Reyes*, 963 F.3d 482, 489 (5th Cir. 2020) (quotation omitted).

Once again, based primarily on the video evidence, the Court is satisfied that Deputy Cockrell had reasonable suspicion to prolong the traffic stop and request that Wilson perform standard field sobriety tests. Wilson failed to drive in a single lane at 2:07 AM on Memorial Day weekend,[16] and such traffic violations late at night are reliable DWI indicia. *See Glover*, 140 S. Ct. at 1189. Wilson indicated that he had just came from a friend's house after watching the game to meet a woman who had just left a club.[17] Wilson briefly dropped his wallet while pulling out his driver's

---

[16] Deputy Cockrell relies on the timing of the traffic stop to support reasonable suspicion, ECF No. 23 at 7, but he does not fully explain why those facts are relevant. Nonetheless, reasonable suspicion may be based on "the factual and practical considerations of everyday life." *Navarette v. California*, 572 U.S. 393, 402 (2014) (quotation omitted). While judicial notice is not strictly necessary here, the Court is aware of the increased number of alcohol-related traffic accidents over Memorial Day weekend, and even Wilson alleges that the HCC "conducted an impaired driver initiative" over Memorial Day weekend "to reduce the number of [DWI] related offenses and fatal crashes." ECF No. 19-1 ¶¶ 27-28. Equally relevant is time of night, as 2:00 AM is around when Houston bars stop serving alcohol. *See* TEX. ALCO. BEV. CODE § 105.05(c). Both factors are plainly relevant.

[17] Wilson insists "that there is no way that any law enforcement officer can tell if someone is impaired by asking them 'where are you coming from.'" ECF No. 31 at 2. But Deputy Cockrell needed no independent justification to ask Wilson his travel plans. *See Brigham*, 382 F.3d at 508. Moreover, Wilson's premise is incorrect as a matter of common sense, as a driver just leaving a

license, his speech was mumbled, and he was unable to fully recall what game he was just watching.[18] Athough Wilson denied drinking any alcohol that night and did not smell of alcohol, as Deputy Cockrell correctly explained, intoxication means more than just alcohol. *See* TEX. PEN. CODE § 49.01(2) (listing "controlled substance" and any type of "drug"). Adding Wilson's statements and conduct to his minor traffic violation, and considering the date and time of night, the Court is satisfied that Deputy Cockrell had reasonable suspicion of intoxication or impairment.

Wilson's arguments to the contrary are unavailing. Wilson argues that because he was not exhibiting *obvious* signs of intoxication, such as "bloodshot or watery eyes, a flushed face, slurred speech, an odor of alcohol," or "stumbling out of the vehicle," then Deputy Cockrell could not have had reasonable suspicion. ECF No. 31 at 3. Wilson apparently likens his situation to *State v. Evans*, where a state court suppressed evidence obtained after a warrantless DWI arrest. 500 S.W.3d 528, 537-38 (Tex. App.—San Antonio 2016, no pet.). The trial court made specific

---

location at which alcohol is usually present, such as a bar, a dance club, or a sports game, is more likely to have recently consumed alcohol.

[18] Deputy Cockrell does not cite these observations as factors he considered, *see* ECF No. 23-3, and Wilson insists that his speech was not slow or incoherent, ECF No. 31, Ex. 2 at 2. But it is clear from the video that Deputy Cockrell was having difficulty understanding Wilson's responses, leading to confusion over where Wilson was coming from. For those same reasons, the Court also cannot discern several of Wilson's responses from the bodycam footage. While there may be any number of innocuous explanations for this, an officer "need not rule out the possibility of innocent conduct" to develop reasonable suspicion. *Navarette*, 572 U.S. at 403 (quotation omitted).

findings—similar to the arguments Wilson now makes—to support its determination that the trooper lacked reasonable suspicion. *Id.* at 537-38. But Wilson's reliance on *Evans* is misplaced, as the trial court conflated the issues of reasonable suspicion to order standard field sobriety tests and probable cause to *arrest* for refusing to perform those tests.[19] Indeed, each of Wilson's examples go beyond what is necessary for the relatively low threshold of reasonable suspicion. *See State v. Garrett*, 22 S.W.3d 650, 654-55 (Tex. App.—Austin 2000, no pet.) (reasoning officers had probable cause for DWI arrest due to "odor of alcohol, watery eyes, and unsteadiness," along with driver's refusal to perform field sobriety tests). If Wilson had been exhibiting such obvious signs of intoxication, Deputy Cockrell likely would have had probable cause to arrest him for DWI *without* performing field sobriety tests. *See id.*

Nor did Deputy Cockrell unlawfully prolong the traffic stop on a "hunch" in hopes of eventually acquiring reasonable suspicion. The factors listed above were

---

[19] *Evans* is further distinguishable on the facts, as the driver there was speeding, 500 S.W.3d at 531, whereas Wilson failed to drive in a single lane. The driver in *Evans* was not unsteady when he "was instructed to stand on the side of the road with his feet together and hands at his side" for two minutes, *id.* at 534, whereas Wilson rested against the trunk of his vehicle while Deputy Cockrell ran his driver's license. The driver in *Evans* "was polite, was not belligerent or argumentative" throughout the encounter, *id.* at 537, whereas Wilson became argumentative and accused Deputy Cockrell of harassment as soon as he mentioned field sobriety tests. The Texas Court of Appeals described the balance of factors that led it to affirm the trial court's findings: "While Evans admitted to having consumed alcohol, all the other specific and articulable facts in this case point to Evans having the normal use of his physical and mental faculties at the time he was stopped for a traffic violation." *Id.* at 537-38. The balance here is not as lopsided, and the applicable standard—reasonable suspicion—is much lower.

all evident to Deputy Cockrell at the time he ran Wilson's license for warrants or shortly thereafter. Officers are entitled to ask such basic questions during *any* lawful stop. *Brigham*, 382 F.3d at 508. Moreover, the whole traffic stop and investigation lasted no longer than 15 minutes. Although there is "no constitutional stopwatch on traffic stops," *id.* at 511, the Fifth Circuit has upheld much longer traffic stops, *see id.* at 504-05 (29 minutes); *Windham*, 875 F.3d at 241-42 (over 90 minutes). The Fourth Amendment is offended when an officer prolongs a traffic stop *without* reasonable suspicion. *See Rodriguez v. United States*, 575 U.S. 348, 356-57 (2015) (rejecting *de minimis* rule for extending traffic stops). Accordingly, Deputy Cockrell had reasonable suspicion that Wilson might be intoxicated, and he was justified in ordering standard field sobriety tests to confirm or dispel those suspicions.[20] No violation of Wilson's constitutional rights occurred.

---

[20] Alternatively, the video shows that Wilson freely consented to perform field sobriety tests, thus there can be no violation. Consent to a search is valid and will dispel any constitutional violation if consent was both "voluntary" and "an independent act of free will." *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006). Although Wilson alleges that Deputy Cockrell "became upset and demanded [Wilson] exit the vehicle to submit to a roadside sobriety test or be arrested," ECF No. 19-1 ¶ 43, and he states by affidavit that he "completed the field sobriety test under duress that [he] would be arrested and go to jail," ECF No. 31, Ex. 2 at 2, the video directly contradicts his version of the facts. Wilson was obviously annoyed at Deputy Cockrell's request to perform field sobriety tests, but Wilson displayed no "duress" and he had no problem repeatedly confronting the Deputies over perceived harassment and violations of his constitutional rights. Deputy Cockrell never mentioned arrest or jail, and he never suggested any penalties for failing to comply. Deputy Cockrell also never *ordered* Wilson to comply—he asked politely, and after explaining his reasons why, Wilson eventually consented. While Deputy Cockrell does not seek summary judgment on those grounds, the bodycam footage shows that Wilson freely and voluntarily consented.

### 2.    *Wilson's subjective belief of racial profiling is insufficient to state a claim for relief.*

The Court liberally construes Wilson's *pro se* pleadings as raising a claim for racial profiling under the Fourteenth Amendment equal protection clause.[21] Courts evaluate racial profiling claims under "ordinary equal protection standards," and a plaintiff must show they "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Stout v. Vincent*, 717 Fed. App'x 468, 471-72 (5th Cir. 2018) (quotations omitted). But "a plaintiff's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief," and such a belief, "standing alone, is not adequate evidence to survive a motion for summary judgment." *Id.* at 472 (cleaned up).

Deputy Cockrell argues that Wilson's allegations are conclusory, pointing to statements from Wilson's deposition effectively conceding that he had no evidence. ECF No. 23 at 9. Indeed, the only external evidence Wilson identified at his deposition was the observation that he "had seen another black person that had got pulled over." ECF No. 23-6 at 18:15-16. In support of his racial profiling claim,

---

[21] Wilson alleges that Deputy Cockrell engaged in racial profiling and that Harris County has a policy of using impaired driver initiatives to stop African-American drivers. ECF No. 19-1 ¶¶ 41, 60-62. Wilson also specifically mentions the Fourteenth Amendment. *Id.* ¶ 70. But the only causes of action he asserts are for unlawful search and seizure and municipal liability. *Id.* ¶¶ 64-74. Nonetheless, because Wilson is a *pro se* litigant, the Court must construe his pleadings "liberally." *Collins v. Dallas Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).

Wilson falls back on allegations from his amended complaint. ECF No. 31 at 11. Wilson insists that Deputy Cockrell is in possession of documents that may support the allegations of racial profiling but has failed to produce them. *Id.* at 11-12. Wilson therefore asks the Court to defer ruling on the motion until discovery is completed. *Id.* at 12.

Deputy Cockrell has met his burden as the moving party, and Wilson must "go beyond the pleadings" to survive summary judgment. *Davis*, 765 F.3d at 484 (quotation omitted). But Wilson has only come forth with a subjective belief that he was racially profiled, which cannot create a fact dispute for trial as a matter of law. Moreover, discovery closed months ago,[22] and the Court already denied Wilson's discovery motions as untimely and moot. Order, ECF No. 33. Summary judgment is thus appropriate on Wilson's equal protection claim for lack of supporting evidence.

### 3. *Deputy Cockrell is further entitled to qualified immunity.*

In § 1983 actions against police officers for acts performed in the scope of

---

[22] Wilson's Rule 56(d) motion requested a stay of summary judgment briefing until the Court could resolve his earlier motion to compel. ECF No. 26 at 2. Wilson asserted that the evidence would help "establish triable issues of fact." ECF No. 27 at 3. But Wilson offered no explanation "how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010). Wilson has therefore waived those arguments by not raising them in his Rule 56(d) motion. Moreover, the requesting party is not entitled to relief under Rule 56(d) if it "has not diligently pursued discovery" prior to summary judgment. *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (quotation omitted). Here, Plaintiff has not diligently pursued discovery. Plaintiff failed to serve his discovery requests until a week before the discovery cut off. Even though Defendant served his responses within the discovery deadline, Wilson's waited to file his motion to compel until two weeks after the discovery cutoff. Order, ECF No. 33 at 3-4. Thus, he was not entitled to relief under Rule 56(d).

their duties, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Byrd v. Cornelius*, 52 F.4th 265, 270-71 (5th Cir. 2022) (quotation omitted). Courts apply a two-part test to determine whether qualified immunity is available: (1) whether "the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established." *Id.* at 271 (quotation omitted). Because Deputy Cockrell committed no constitutional violation here as explained above, *see supra* §A. 1., the Court's analysis on qualified immunity ends at step one.

Wilson's arguments to the contrary are largely premised on a misreading of the law. Wilson contends that standard field sobriety tests are Fourth Amendment searches that require "probable cause" under clearly established law. ECF No. 31 at 13-14. But Wilson's reliance on *Carpenter v. United States* is perplexing, as that case did not address field sobriety tests at all. 585 U.S. ___, 138 S. Ct. 2206, 2221 (2018) (holding requests for historical cell-site location information require warrant supported by probable cause). The other cases he cites support the opposite conclusion. *See State v. Wilcox*, 288 A.3d 1200, 1207 (Me. 2023), *cert. denied*, 143 S. Ct. 2666 (2023) ("[O]nly a reasonable articulable suspicion of intoxication was required to conduct field sobriety testing."); *Evans*, 500 S.W.3d at 536 (suggesting only "reasonable suspicion" necessary to continue detention and investigate whether

driver "was driving while intoxicated"). Although the Fifth Circuit has not squarely addressed the issue yet, it has indicated that reasonable suspicion is the applicable standard for ordering field sobriety tests, such as the nystagmus test, one-leg stand, and the walk-and-turn test. *Windham*, 875 F.3d at 241. This comports with the law in other circuits. *See Rogala*, 161 F.3d at 52; *Green*, 681 F.3d at 862.

Perhaps Wilson is relying on Deputy Cockrell's statements during the traffic stop, that he had "probable cause" for further investigation. But those misstatements are of no moment. Wilson began the argument by insisting that Deputy Cockrell had "no probable cause," so Deputy Cockrell responded to those arguments. Wilson cites no cases establishing that probable cause is necessary to order field sobriety tests. Instead, only reasonable suspicion is required to prolong a traffic stop through field sobriety tests. *See Windham*, 875 F.3d at 241. Because Deputy Cockrell had reasonable suspicion to investigate whether Wilson may have been intoxicated, no constitutional violation occurred. *See supra* § A.1. Therefore, dismissal based on qualified immunity is also appropriate.

### 4.    *Although Wilson voluntarily dismisses his Fifth Amendment and official-capacity claims, those also fail on the merits.*

Deputy Cockrell additionally seeks summary judgment on Wilson's claims for due process violations under the Fifth Amendment because he is not a federal officer. ECF No. 23 at 9-10. Deputy Cockrell then argues that any official-capacity claims must also be dismissed as duplicative of Wilson's municipal liability claims.

*Id.* at 10. Wilson, in response, states that he has "no objections" to the dismissal of these claims. ECF No. 31 at 12.

The Court agrees in both respects. *See Collins v. Collier*, No. CV H-19-0537, 2022 WL 463932, at *3 (S.D. Tex. Feb. 15, 2022) ("The due process clause of the Fifth Amendment applies only to actions of the federal government."); *Jordan v. Brumfield*, 687 Fed. App'x 408, 415 (5th Cir. 2017) ("A claim against an officer in his official capacity is treated as a claim against the municipality."). It is undisputed that Deputy Cockrell is employed by HCC Precinct 4, not the federal government. ECF No. 23-3. Wilson thus fails to state a claim under the Fifth Amendment's due process clause. To the extent any official-capacity claims may have been cognizable as claims against Harris County or any municipality, the Court addresses that issue below. Accordingly, Deputy Cockrell is entitled to summary judgment on all claims.

### B.    Wilson's Remaining Claims Must Be Dismissed for Failure to State a Claim Under 28 U.S.C. § 1915(e).

When Wilson filed this *pro se* IFP action, the Court at that time did not screen his complaint for frivolousness under § 1915(e). *See* ECF No. 4. Deputy Cockrell's motion, ECF No. 23, does not address any claims against Deputy Thompson or Wilson's claim for municipal liability. The Court will therefore take this opportunity to screen the remainder of Wilson's amended complaint based on the Court's rulings above. Because Wilson fails to state any viable claims for relief, his amended complaint, ECF No. 19-1, will be dismissed with prejudice.

### 1. *Service is not apparent on the record, and Wilson fails to state any separate claims against Deputy Thompson.*

Although Wilson amended his complaint to name Deputy Thompson as an additional defendant, ECF No. 19-1 ¶ 11, Deputy Thompson has not yet made an appearance in this case. As set forth in the Court's initial conference order, a plaintiff's failure "to file proof of service within 90 days after the filing of the complaint may result in dismissal." Order, ECF No. 4 at 2; *see also* FED. R. CIV. P. 4(m). It is not evident whether Wilson ever attempted to separately serve process on Deputy Thompson, and there is no request for issuance of summons on the docket. Notwithstanding Plaintiff's failure to timely effectuate service, Wilson's claims are without merit.

Wilson's amended complaint does not assert any separate claims against Deputy Thompson or allege any other facts that would imply independent grounds for liability—the claims and allegations are identical. *See* ECF No. 19-1 ¶¶ 64-70. Indeed, the bodycam footage confirms that Deputy Thompson played a minor role in Wilson's traffic stop. Deputy Thompson did not appear to have any substantive interactions with Wilson, and Wilson has not alleged otherwise. Because Wilson's claims against Deputy Thompson are indistinguishable from those against Deputy Cockrell—which the Court has already determined are without merit—then those identical claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

### 2. *Wilson's municipal liability claims fail for lack of service and on the merits.*

Wilson also asserts claims for municipal liability in his amended complaint. ECF No. 19-1 ¶¶ 71-74. But he never named Harris County or HCC Precinct 4 as defendants in this action.[23] Regardless, there are three essential elements that a plaintiff must show to state a viable claim of municipal liability under § 1983: (1) "an official policy," (2) a "municipal policymaker" who promulgated that policy, and (3) a "violation of a constitutional right" for which the policy "was the moving force." *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018). Wilson's complaint does not adequately identify an official policy or a policymaker.[24] But more importantly, as set forth above, there was no violation of a constitutional right. Because Wilson has no predicate constitutional violation, Wilson cannot satisfy the test for municipal liability as a matter of law. *See Harmon v. City of Arlington*, 478

---

[23] Wilson does, however, assert claims against the Deputies in their official capacity, ECF No. 19-1 ¶ 66, which are treated as claims against the municipality, *Jordan*, 687 Fed. App'x at 415. While Wilson voluntarily dismissed those claims against Deputy Wilson, ECF No. 31 at 12, he did not dismiss the claims against Deputy Thompson. The Court therefore considers this to be a live claim.

[24] Although Wilson alleges that Harris County has "a custom, practice, or policy of stopping African-Americans for being black in Houston," ECF No. 19-1 ¶ 62, as well as customs of failing to train, discipline, investigate, or supervise, *id.* ¶ 74, these assertions are insufficient. An official policy can be shown through "a policy statement formally announced by an official policymaker," or a plaintiff may attempt to show a custom through the "persistent widespread practice of city officials." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (quotations omitted). A plaintiff's description of the official policy or custom in the complaint "cannot be conclusory; it must contain specific facts" to survive a motion to dismiss. *Pena*, 879 F.3d at 622 (quotation omitted). Aside from his own traffic stop, Wilson alleges no pattern or practice in Harris County, and he identifies no formal policy statement. The complaint fails to identify any "specific facts," so the Court must disregard Wilson's conclusory assertions.

F. Supp. 3d 561, 575 (N.D. Tex. 2020), *aff'd*, 16 F.4th 1159 (5th Cir. 2021) (summarily dismissing municipal liability claims where plaintiff "has no underlying constitutional violation"). Wilson thus fails to state a claim against any municipal defendant, and those claims must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.   *Granting leave to amend would be futile, so the Court will dismiss Wilson's complaint with prejudice.*

Under most circumstances, leave to amend an otherwise defective complaint is freely given as justice requires. FED. R. CIV. P. 15(a)(2). But leave may be denied if any amendment would be futile, which courts evaluate under the Rule 12(b)(6) standards for dismissal. *Mandujano v. City of Pharr*, 786 Fed. App'x 434, 438 (5th Cir. 2019). While courts should not dismiss a *pro se* complaint before offering an opportunity to amend, further leave to amend may be denied where amendment would be futile, or where the plaintiff "has already pleaded his 'best case.'" *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020).

In this situation, Wilson has already pleaded his best case. Indeed, as set forth above, Wilson's claims against Deputy Cockrell fail based on the evidence adduced at summary judgment. Wilson's remaining claims are either predicated upon or identical to those claims. Even if leave were sought at this late stage for Wilson to name and serve additional defendants, those claims would still lack merit. The Court has reviewed the footage of Wilson's traffic stop and investigation, but it reveals nothing out of the ordinary. The Court acknowledges that even a routine traffic

stop—and certainly being asked to perform field sobriety tests—may subjectively *feel* like harassment. But the Fourth Amendment "accepts the risk that officers may stop innocent people." *Illinois v. Wardlow*, 528 U.S. 119, 126 (2000). Because the undisputed video evidence confirms that reasonable suspicion existed for the traffic stop and subsequent DWI investigation, leave to amend would be futile.

## IV.   CONCLUSION

For the reasons stated above, Deputy Cockrell's motion for summary judgment, ECF No. 23, is **GRANTED**. Because Wilson's remaining allegations fail to state a claim for relief, the **COMPLAINT** shall be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e).

**IT IS SO ORDERED.**

Signed at Houston, Texas, on November 27, 2023.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**